# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CHICAGO TITLE INSURANCE COMPANY,** as assignee of **WASHINGTON MUTUAL BANK** <br><br> Plaintiff, <br><br> v. <br><br> **GERALD LLOYD PROSCH,** <br><br> Defendant. | ) ) ) ) ) ) ) ) **CIVIL ACTION NO. 08-00204-CG-C** ) ) ) ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on plaintiff's motion for summary judgment. (Doc. 50), defendant's opposition thereto (Doc. 64), and plaintiff's reply (Doc. 68). For the reasons that will be explained below, the court finds that summary judgment is due to be granted in favor of plaintiff.

## FACTS

Plaintiff's amended complaint asserts seven counts against defendant, Gerald Lloyd Prosch: I) unjust enrichment, II) equitable subrogation, III) constructive trust, IV) breach of statutory warranty of title, V) breach of express warranty of title, VI) negligence, VII) wantonness, and VIII) indemnity. (Amended Complaint, Doc. 29). The parties generally do not dispute the underlying facts in this case, but dispute their legal significance. (See Doc. 64, ¶ 2).

Defendant owned Lot 4, Cothran Oaks, ("the property") encumbered by a note and mortgage in favor of Colonial Bank. In August 1999, defendant sold the property, via a vendor's

lien deed[1], to Lawanda and Travis Mathews. (Doc. 52-3). Travis Mathews executed a quitclaim deed in Lawanda Mathews' favor on November 27, 2001. (Doc. 52-4). In April 2002, defendant agreed to sell the property to Lawanda Mathews and he cancelled the vendor's lien. (Doc. 52-5). Lawanda Mathews financed her purchase of the property with a note and mortgage on the property with Worthington Mortgage Group, Inc. (Doc. 52-6). The sale from defendant to Lawanda Mathews closed on April 19, 2002. (Doc. 52-6). Defendant did not attend the closing, but testified that he received a check from the closing for about $90,000.00 and that, although he owed money to the mortgage company on the property, he did not use any of that money to pay off the loan. (Doc. 52-7, pp. 5-6). According to defendant, he owned numerous properties at the time and he did not realize until later, when the title company contacted him, that the check he had received for this property was more than his equity in the property and that the loan had not been paid off. (Doc. 5207, p. 6). Defendant admitted at his deposition that he was not entitled to all of the $90,000.00 he was paid for the property. (Doc. 52-7, p. 6).

On October 18, 2003, Lawanda Mathews refinanced the Worthington Mortgage with Washington Mutual Bank. (Doc. 52-8). Plaintiff, Chicago Title, issued a title insurance policy on the mortgage loan of October 18, 2003. (Doc. 52-9).

In 2006, defendant filed a civil action in Jefferson County, Alabama, against Washington Mutual, Colonial Bank, and other parties, asserting that they had failed to apply or had misapplied payments on existing mortgages, they had misrepresented and suppressed facts

---

[1] Under the vendor's lien deed, the Mathews paid defendant $5,000.00 and were to make payments on the balance of the purchase price, $92,000.00 plus interest, to the defendant over the next five years. The deed reserved a vendor's lien on the property in favor of defendant to secure the Mathews' performance. (Doc. 52-3).

regarding how the payments would be applied, they had reported an adverse action to national credit reporting agencies, and had begun foreclosure proceedings to collect debts that were not owed. (Doc. 65-1). Colonial Bank filed a counter claim asserting that defendant has defaulted on some of his notes and mortgages including the mortgage on Lot 4, Cothran Oaks. (Doc. 64-3). Washington Mutual reportedly did not file any counterclaims in this 2006 action.

Colonial Bank foreclosed on the property in February 2008. (Doc. 52-10). Because Washington Mutual's interest in the property was impaired, it pursued a claim on the title insurance policy issued by Chicago Title, and Washington Mutual assigned all claims and causes of action against defendant over to Chicago Title. (Doc. 52-9). Chicago Title paid Washington Mutual the sum of $84,975.95 to satisfy Washington Mutual's claim. (Doc. 52-9).

## LAW

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002)

(quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a

4

genuine issue for trial." FED. R. CIV. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Discussion**

Plaintiff asserts that defendant was unjustly enriched by receiving sums at the closing of the Worthington Mortgage that should have been paid to satisfy the Colonial Mortgage. Defendant has admitted that he was not entitled to all of the proceeds he received from the sale of the property in 2002 and that none of the funds he received were paid towards the loan. The evidence also indicates that defendant's failure to satisfy the Colonial Mortgage resulted in the impairment of Washington Mutual's interest in the property and ultimately in Chicago Title paying Washington Mutual's claim in the amount of $84,975.95. Under these facts, plaintiff asserts that it is also entitled to equitable subrogation against the defendant for the impairment to Washington Mutual's interest in the property. Plaintiff further asserts that defendant had a duty to satisfy the Colonial mortgage when he received the sums from the closing of the Worthington mortgage and that he negligently and wantonly breached that duty and thereby injured Chicago Title.

5

Defendant opposes the summary judgment motion by asserting that plaintiff's claims were compulsory counterclaims that should have been asserted in the 2006 Jefferson County litigation. Defendant contends that because plaintiff failed to raise the claims in the 2006 litigation the claims are barred by the doctrines of collateral estoppel and/or res judicata. Defendant further asserts that plaintiff's claims are barred by laches, the applicable statute of limitations, unclean hands and because plaintiff has failed to join an indispensible party.

1**. Res Judicata/Collateral Estoppel**

"Res judicata, or claim preclusion, bars a party from relitigating a cause of action that was, or could have been, raised in a previous suit between the parties that resulted in a final judgment on the merits." Sherrod v. School Bd. of Palm Beach County, 2008 WL 926400, * 1 (11th Cir. April 7, 2008) (citing In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001)). "A party seeking to invoke res judicata must satisfy four elements: '(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action.'" Id. (quoting In re Piper Aircraft supra). Plaintiff asserts that res judicata does not apply to this case because the cases do not involve the same causes of action. "Res judicata acts as a bar 'not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.'" Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1356-57 (11th Cir. 1998)( quoting Manning v. City of Auburn, 953 F.2d 1355, 1358-59 (11th Cir. 1992)) see also Olmstead v. Amoco Oil Co., 725 F.2d 627, 632 (11th Cir. 1984) (Res judicata "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims

arising out of the same 'operative nucleus of fact.'"). Defendant contends that the claims in this case were compulsory counterclaims that should have been raised in the prior lawsuit. If a compulsory counterclaim is not brought with the original action, "relitigation of the claim may be barred by the doctrines of res judicata or collateral estoppel." Daniel v. General Motors Acceptance Corp., 2008 WL 3876764 * (M.D. Ala. 2008). However, plaintiff argues that its claims in this action did not mature until after all answers were filed in the Jefferson County lawsuit. Additionally, plaintiff asserts that the claims do not arise out of the same transaction or occurrence.

Plaintiff is correct that "Alabama's compulsory counterclaim rule does not require a defendant to file as a compulsory counterclaim a claim that has not yet 'matured.'" Ferrari v. E-Rate Consulting Services, 655 F.Supp.2d 1194, 1201 (M.D. Ala. 2009) (citing Bedsole v. Goodloe, 912 So.2d 508, 517 (Ala. 2005)). "A counterclaim acquired by defendant after he has answered will not be considered compulsory, even if it arises out of the same transaction as does plaintiff's claim." Bedsole, 912 So.2d at 517 (quoting Liberty Mutual Insurance Co. v. Wheelwright Trucking Co., 851 So.2d 466, 484 (Ala. 2002)). "A counterclaim which does not exist at the time of the service of an answer cannot be compulsory since the existence of a counterclaim is determined at the time of service of the answer." Id. (quoting Liberty Mutual, supra). "[T]he doctrine of res judicata does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim." Moore v. Sei Pak, 2010 WL 4487063, 2 (11th Cir. Nov. 10, 2010) (citing Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1357 (11th Cir. 1998)). Only "claims which arose from the same transaction or occurrence and which [the plaintiff] had at the time [it] filed the Answer in the state case are barred by res judicata." Ferrari,

7

655 F.Supp.2d at 1199 (citation omitted).

After reviewing the claims asserted in this action, the court finds that they did not arise from the same transaction or occurrence as the claims asserted in the Jefferson County action, and that at least some of the claims did not mature prior to Washington Mutual filing its Answer in the Jefferson County action. Colonial Bank did not foreclose on the property until February 2008. Thus, it was in February 2008 that plaintiff alleges Washington Mutual's interest in the property was impaired and that Chicago Title's subrogation claims arose. However, Washington Mutual's interest was impaired at the time the Washington Mutual Mortgage was executed. Upon the execution of the mortgage, Washington Mutual did not obtain first priority of record as had been intended, due to the Colonial Mortgage not being satisfied. Even if the court were to consider Washington Mutual's interest as unimpaired until defendant defaulted on the Colonial Bank Mortgage, Colonial Bank's answer in the Jefferson County action indicates that defendant defaulted prior to the filing of Colonial Bank's answer. Conversely, Chicago Title was not itself damaged until Washington Mutual filed a claim on the title insurance policy issued by Chicago Title and Chicago Title paid the sum of $84,975.95 to satisfy Washington Mutual's claim.

Regardless which claims were after-acquired and which arose prior to the Jefferson County lawsuit, none of the claims are barred by res judicata or collateral estoppel because they are not logically related to the Jefferson County litigation. The misapplication of loan payments by the various banks on several mortgages has nothing to do with defendant's failure to satisfy the note on Lot 4, Cothran Oaks or the claim paid by Chicago Title to Washington Mutual. Although Washington Mutual's mortgage was one of the mortgages in which payments had allegedly been misapplied, the claims had nothing to do with defendant's duty to pay off the

8

Colonial note and mortgage in its entirety when he sold the property and a new note and mortgage with Washington Mutual was executed. As such, the court finds that res judicata and collateral estoppel do not bar plaintiff's claims.

### 2. Laches

Laches is a common-law defense of "unreasonable delay in pursuing a right or claim -- almost always an equitable one -- in a way that prejudices the party against whom relief is sought." BLACK'S LAW DICTIONARY 953 (9th ed. 2009). In terminology that virtually mirrors the definition, the United States Supreme Court has stated that the laches defense "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 2077, 153 L.Ed.2d 106 (2002). Defendants have not shown that they suffered undue prejudice from plaintiff's delay in bringing its claims. Conclusory statements that defendant suffered prejudice are insufficient. See e.g. Meyers v. Asics Corp., 974 F.2d 1304, 1308 (Fed.Cir. 1992) ("Defendants also argue that they suffered evidentiary prejudice - loss of key witnesses and loss of documentary evidence. However, none of the defendants state exactly what particular prejudice it suffered from the absence of these witnesses or evidence. Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient."). As the Sixth Circuit has explained:

> [L]aches does not result from a mere lapse of time but from the fact that, during
> the lapse of time, changed circumstances inequitably work to the disadvantage or
> prejudice of another if the claim is now to be enforced. By his negligent delay, the
> plaintiff may have misled the defendant or others into acting on the assumption
> that the plaintiff has abandoned his claim, or that he acquiesces in the situation, or

9

changed circumstances may make it more difficult to defend against the claim.
Chirco v. Crosswinds Communities, Inc., 474 F.3d 227, 231 (6th Cir. 2007) (quoting 11A
CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND
PROCEDURE § 2946 at 117 (2d ed. 1995)).  Defendant has not asserted, much less demonstrated, that changed circumstances have inequitably disadvantaged or prejudiced him.

Moreover, as explained above, Chicago Title was not damaged until February 2008, when Colonial foreclosed on the property and Washington Mutual filed a claim on the title insurance policy issued by Chicago Title.  This action was filed only two months later, on April 18, 2008. (Doc. 1).  Plaintiff's subrogation claim arose in October 2003, when Lawanda Mathews refinanced the Worthington Mortgage with Washington Mutual Bank and Washington Mutual obtained a subordinate interest to Colonial Bank.  However, as stated earlier, defendant has not shown that changed circumstances have inequitably disadvantaged or prejudiced him. The court finds that laches does not apply to this case.

### 3. Statute of Limitations

Defendant asserts that plaintiff's negligence and wantonness claims are barred by the applicable two-year statute of limitations.  However, as plaintiff points out, "a cause of action in tort accrues only when actual damage or injury is sustained." Matthews Bros. Const. Co., Inc. v. Stonebrook Development, L.L.C., 854 So.2d 573, 577 (Ala.Civ.App. 2001).   As previously discussed, Chicago Title was not injured until Washington Mutual asserted a claim and Chicago Title paid Washington Mutual the sum of $84,975.95.  As such, the statute of limitations did not begin to run until February 2008, only two months before the instant action was filed.  Thus, the

court finds that the statute of limitations does not bar plaintiff's negligence claim, at least to the extent it is premised on its own injury, rather than on a subrogation claim through Washington Mutual.

As to plaintiff's wantonness claim, the plaintiff argues that the claim is subject to the six-year statute of limitations period of ALA. CODE § 6-2-34. Plaintiff cites Carr v. Int'l. Ref. & Mfg. Co., 13 So.3d 947, 953-54 (Ala 2009) which, plaintiff asserts, adopted an "intent-based analysis" in determining whether to apply a six-year statute of limitations to a wantonness claim. Plaintiff is correct that "the intentional nature of the harm caused by the defendant in injuring the plaintiff" has been found to result in the application of the six-year statute of limitations in some cases. See Walker v. Capstone Bldg. Corp., ---So.3d ---, 2010 WL 1170094, *5 (Ala.Civ.App. March 26, 2010) (discussing Carr supra and McKenzie v. Killian, 887 So.2d 861 (Ala.2004)). However, the causes of action involved in such cases were based on claims for personal injuries or trespasses, resulting in the application of ALA. CODE § 6-2-34(1). Section 6-2-34(1) specifically provides for a six year statute of limitations for "[a]ctions for any trespass to person or liberty, such as false imprisonment or assault and battery." Although plaintiff contends that defendant's retention of the funds was intentional, plaintiff has not explained how the instant wantonness claim qualifies as a trespass to person or liberty, or pointed to any other provision enumerated in § 6-2-34[2] under which its claims might fall. Thus, the court finds that

---

[2] Alabama Code § 2-3-34 also provides a six year statute of limitation for the following:
    (2) Actions for any trespass to real or personal property;
    (3) Actions for the detention or conversion of personal property;
    (4) Actions founded on promises in writing not under seal;
    (5) Actions for the recovery of money upon a loan, upon a stated or liquidated

plaintiff has not shown that the extended statute of limitations provided by § 6-2-34 applies to plaintiff's wantonness claim. Nevertheless, as with plaintiff's negligence claim, the statute of limitations did not begin to run on plaintiff's wantonness claim until it sustained damages or injury. Thus, the court finds that the wantonness claim is not barred by the statute of limitations.

**4. Unclean Hands**

Defendant asserts that "Chicago Title's misfeasance and negligence in connection with the mortgage loan of October 18, 2003, wherein Chicago Title missed the outstanding lien, caused the payment by Chicago Title to Washington Mutual in the first instance." (Doc. 64, p. 9). As such, defendant asserts that plaintiff cannot recover on its equitable claims because it has "unclean hands." This court has explained the doctrine of "unclean hands" as follows:

> [I]t is well established that "one who seeks equity must do equity and one that comes into equity must come with clean hands." J & M Bail Bonding Co. v. Hayes, 748 So.2d 198, 199 (Ala. 1999) (citation and internal quotation marks omitted). But the "unclean hands" doctrine is one of narrow application. Alabama courts have emphasized that "the doctrine of unclean hands cannot be applied in the context of nebulous speculation or vague generalities; but rather it finds expression in specific acts of willful misconduct which is morally reprehensible as to known facts." Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 932 (Ala. 2007) (citations omitted). In all cases, "[t]he

---

account or for arrears of rent due upon a parol demise;
(6) Actions for the use and occupation of land;
(7) Motions and other actions against the sureties of any sheriff, coroner, constable, or any public officer and actions against the sureties of executors, administrators, or guardians for any nonfeasance, misfeasance, or malfeasance, whatsoever, of their principal, the time to be computed from the act done or omitted by their principal which fixes the liability of the surety;
(8) Motions and other actions against attorneys-at-law for failure to pay over money of their clients or for neglect or omission of duty; and
(9) Actions upon any simple contract or speciality not specifically enumerated in this section.

application of the clean hands doctrine is a matter within the sound discretion of the trial court." J & M Bail Bonding, 748 So.2d at 199.

Odom v. Southeast Supply Header, LLC, 675 F.Supp.2d 1105, 1120 (S.D. Ala. 2009). Defendant has not pointed to any acts by Chicago Title or Washington Mutual which could be considered willful misconduct or morally reprehensible as to known facts. Plaintiff's conduct might have been negligent, but there is no evidence that it or Washington Mutual knowingly and intentionally did anything to allow or cause defendant to receive more than he was entitled and for the Colonial Mortgage to remain outstanding. As such, the court finds that the doctrine of unclean hands does not bar plaintiff's claims.

### 5. Indispensible Party

Defendant asserts that the case should be dismissed for failure to join Guarantee Title, a necessary party. Federal Rule of Civil Procedure 12(b)(7) provides that courts may dismiss suits where plaintiffs fail to join indispensable parties. To determine whether a court should dismiss an action for failure to join an indispensable party, courts must apply the criteria set forth in Federal Rule of Civil Procedure 19. See Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc., 669 F.2d 667, 669 (11th Cir. 1982). Under Rule 19(a)(1):

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or

> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). In applying Rule 19(a)'s criteria, the court must give controlling weight to the "pragmatic concerns, especially the effect on the parties and the litigation." See Challenge Homes, Inc., 669 F.2d at 669 (citing Smith v. State Farm Fire & Cas. Co., 633 F.2d 401, 405 (5th Cir. 1980)). "The burden is on the moving parties to establish indispensability." Ship Constr. & Funding Servs. (USA), Inc. v. Star Cruises PLC, 174 F.Supp.2d 1320, 1325 (S.D. Fla. 2001). While Guarantee Title handled the closing in the sale of Lot 4 to Lawanda Mathews, defendant has not shown that Guaranty Title is a necessary party. The court notes that Guarantee Title was originally named as a defendant in this lawsuit and did not assert any claim or interest.[3] Plaintiff and Guarantee Title stipulated to the dismissal of plaintiff's claims against Guarantee Title. (Doc. 20). The court finds that complete relief can be accorded among the named parties and that there appears to be no risk that defendant will incur double, multiple, or inconsistent obligations. As such, the court finds that Guarantee Title is not an indispensible party.

## CONCLUSION

For the reasons stated above, the motion of Chicago Title Insurance Company for summary judgment (Doc. 50) is **GRANTED** and judgment will be entered against defendant, Gerald Lloyd Prosch, and in favor of plaintiff, Chicago Title Insurance Company, in the amount of **$84,975.95 plus interest, fees, and costs**.

---

[3] Guarantee Title did file a motion to dismiss (Doc. 10), which became moot upon Guarantee's dismissal by stipulation.

Plaintiff is **ORDERED** to file, on or before **February 9, 2011**, an accounting of the interest, fees, and costs it believes it is entitled to in this action so that a final judgment can be entered. Defendant's response will be due on or before **February 16, 2011,** and any reply to the response will be due on or before **February 23, 2011.**

**DONE and ORDERED** this 26th day of January, 2011.

/s/  Callie V. S. Grande
UNITED STATES DISTRICT JUDGE